UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TRUSTEES OF THE LOCAL 807 LABOR-
MANAGEMENT HEALTH & PENSION FUNDS,

       Plaintiffs,

**MEMORANDUM AND ORDER**
CV-03-3659 (JMA)

   -against-

RIVER TRUCKING AND RIGGING, INC.

       Defendant.
------------------------------------------------------------X

A P P E A R A N C E S:

   Charles Pergue
   Cary Kane, LLP
   1350 Broadway
   New York, New York 10036
   Attorney for Plaintiffs

   Eugene F. Levy, Esq.
   80-02 Kew Gardens Road
   Kew Gardens, NY 11415
   Attorney for Defendant

**AZRACK, United States Magistrate Judge:**

    Plaintiffs, the trustees and fiduciaries (the "Trustees") of Local 807 Labor-Management Health and Pension Funds (the "Funds"), bring this action under Sections 502 and 515 of the Employee Retirement Income and Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, against defendant, River Trucking and Rigging, Inc. ("River Trucking"), to collect unpaid fringe benefit contributions to the Funds. Plaintiffs also seek interest, liquidated damages, as well as attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(2).

    By motion of December 17, 2004, plaintiffs move for summary judgment pursuant to

1

Fed. R. Civ. P. 56.  The parties have consented to disposition of this action by a magistrate judge pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below, plaintiffs' motion for summary judgment is hereby granted.

## I.  FACTS

Defendant River Trucking is a New York corporation, having its principal place of business in Brooklyn, New York, and is engaged in the business of providing trucking and rigging services on a per contract basis.  (Def.'s Mem. of Law in Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Opp'n") at 1.)  Defendant entered into the National Master Freight Agreement (the "Agreement") with Truck Drivers Local Union No. 807 of the International Brotherhood of Teamsters (the "Union") covering the period April 1, 1998 through March 31, 2003.  (Pls'. 56.1 Stmt. ¶ 3.)  Under the terms of the Agreement, defendant was required to make specific contributions to the Funds for each hour worked by employees covered by the Agreement.  (Id. at ¶ 4.)  The Funds are multiemployer benefit plans within the meaning of ERISA, 29 U.S.C. §§ 1002(3) and (37), and are collectively bargained funds created pursuant to 29 U.S.C. § 186(c). (Id. at ¶ 1.)  The Funds hired Schultheis & Panettieri to conduct an audit of defendant's payroll records for the period November 1, 1999 through September 30, 2003.  (Id. at ¶ 6.)  The audit was conducted on November 14, 2003 and it was determined that for the period January 1, 2000 through December 31, 2002 defendant did not make all of the required contributions to the Funds for employees Ryan Farrell ("Farrell"), Julio Cali ("Cali"), and Henry Womack ("Womack").  (River Trucking Payroll Audit, annexed to Pls.' Mot. for Summ. J. at F0008-F00013.)   The audit revealed that defendant's unpaid contributions totaled $15,048.80.  (Id. at F00010.)  In addition to $15,048.80 for unpaid contributions, plaintiffs are seeking interest,

liquidated damages, attorney's fees, and costs.

## II. DISCUSSION

### A. Summary Judgment Standard

The standard for granting summary judgment is well established. Summary judgment should be granted only where there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). "[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists," Gallo v. Prudential Residential Services, L.P., 22 F.3d 1219, 1223 (2d Cir. 1994), but "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Konikoff v. Prudential Ins. Co. of America, 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In determining whether any material facts are in dispute, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Am. Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994) (quoting Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir.1993)); see also Anderson, 477 U.S. at 255. To defeat a motion for summary judgment, the non-moving

party must "set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587. The non-moving party, however, "must do more than show there is some metaphysical doubt as to the material facts." Id. at 586. Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998); Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). The non-moving party must come forth with "significant probative evidence" demonstrating that a factual dispute does in fact exist. Anderson, 477 U.S. at 249.

### B. Plaintiff's Motion for Summary Judgment

Under Section 515 of ERISA, employers are required "to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . ." 29 U.S.C. § 1145.

Plaintiffs assert that for the period January 1, 2000 through December 31, 2002 defendant failed to make required contributions to the Funds totaling $15,048.80 for employees Farrell, Cali, and Womack. (Aff. of Alfred Fernandez dated Oct. 28, 2004 ("Fernandez Aff."), ¶ 5.) Plaintiffs further assert that during this time, defendants made only sporadic contributions to the Funds on behalf of these three employees. (Aff. of Viorel Kuzma dated Oct. 18, 2004 ("Kuzma Aff."), ¶ 4.) In addition to $15,048.80 in delinquent contributions, plaintiffs are also requesting interest, liquidated damages, attorney's fees, and costs. (Pls.' Mot. for Summ. J. at 4.)

Defendant makes two arguments in opposition to plaintiffs' motion for summary judgment. First, defendant argues that Farrell was not a "teamster driver" but an office employee and not a member of the union. (Def.'s Opp'n at 2.) Defendant, therefore, contends that it was not required to make contributions to the Funds on his behalf. (Id.) Second, defendant argues

4

that Cali and Womack did not work for River Trucking at various times from January 1, 2000 through December 31, 2002 because of a company work shortage. (Id.) Defendant states that during these periods of "lay-offs," it would "loan [Cali and Womack] money to carry them over" and "these monies were paid back to the company at a later date." (Id.; see also Aff. of Julio Cali dated Jan. 23, 2004 ("Cali Aff."), Ex. B to Def.'s Opp'n; Aff. of Henry Womack dated Jan. 23, 2004 ("Womack Aff."), Ex. C to Def.'s Opp'n.) Defendant, therefore, contends that it was not required to make contributions to the Funds on behalf of Cali and Womack for the periods when they were unemployed.

### 1. Ryan Farrell

Defendant argues that it was not required to make contributions to the Funds on behalf of Farrell because he was not a covered employee under the terms and conditions of the Agreement. (Def.'s Opp'n at 2.) Defendant also states that the Agreement required employers to terminate any non-union employee within 72 hours of being notified by a union representative of the employee's continued refusal to become a member of the Union. (Id.) Defendant argues that since it was never given the requisite notice of termination for Farrell, it was not obligated to make contributions on his behalf. (Id.)

In Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 319 (6th Cir. 1984) (en banc), cert. denied, 471 U.S. 1017 (1985), the Sixth Circuit rejected defendant's argument that the collective bargaining agreement required contributions only on behalf of those employees who were members of the union. The court held that defendant was obligated to make contributions for both union and non-union employees and set forth four factors that would aid in determining the scope of a collective bargaining agreement. See id. at

318. First, the court explained that where the collective bargaining agreement defines employees by job classification, *all* employees, union and non-union, are covered by the terms of the agreement. See id. at 318. (emphasis added). Second, it stated, "a recognition clause designating the union as the exclusive bargaining agent for all employees indicates that fringe benefit contributions are required for both union and non-union members." Id. at 318. Third, the court noted that the lack of any specific language in the collective bargaining agreement distinguishing between union and non-union employees suggests that no distinction was intended and therefore, all employees are covered by the agreement. See id. at 318. Finally, the court found that the presence of a union shop clause, which requires employees to be members of the union, merely requires "payment of union dues and not union membership." Id. at 318.

Several courts within this circuit have adopted the approach of the Sixth Circuit. See Demolition Workers Union v. Mackroyce Contracting Corp., No. 97 Civ. 4094, 2000 WL 297244, at *4 (S.D.N.Y. Mar. 22, 2000); Plumbers, Pipefitters & Apprentices Local Union No. 112 Pension, Health & Educ. & Apprenticeship Plans v. Mauro's Plumbing, Heating & Fire Suppression, Inc., 84 F. Supp. 2d 344, 353 (N.D.N.Y. 2000); Cent. Pension Fund of the Int'l Union of Operating Engineers & Participating Employers v. Murphy's Tire, Inc., No. 97-CV-814, 1998 WL 865594, at *5 (N.D.N.Y. Dec. 9, 1998); NYSA-ILA Med. and Clinical Servs. Fund v. Golten Marine Co., Inc., 91 Civ. 4707, 1994 WL 800706, at *4 (S.D.N.Y. Dec. 21, 1994); New York State Teamsters Council Health and Hosp. Fund v. City of Utica, 643 F. Supp. 619, 621-22 (N.D.N.Y. 1986). I find this approach instructive and will therefore apply it to the facts of this case.

First, the Agreement defendants and the Union defines employees by job classification.

Article 40, § 1 of the New Jersey-New York General Trucking Supplemental Agreement ("Supplemental Agreement") states, "this Agreement shall cover all . . . office and clerical help." Furthermore, Article 40, § 2 states, "the term employee also includes but is not limited to, all employees used in . . . office and garage work." Second, the Agreement includes a recognition clause designating the Union as the "exclusive representative[] of all employees in the classifications of work covered" by the Agreement." Article 3, § 1(a). Third, the Agreement does not make a distinction between union and non-union employees for the purposes of contribution payments. Rather, Schedule B of the Agreement provides that the employer shall make payments to the Funds "per hour per employee for every hour paid . . . ." Finally, the union shop clause requires that "[a]ll present employees who are not members of the Local Union and all employees who are hired hereafter shall become members of the Local Union as a condition of employment . . . ."[1] Article 3, § 1(b). As courts have held in previous cases, "equating covered employees with union members would render the clause meaningless." Demolition Workers, 2000 WL 297244, at *5; see also Kohn Beverage, 749 F.2d at 318;

---

[1] Although the union shop clause requires employees to become members of the Union as a condition of continued employment, this requirement may be satisfied in one of two ways. The employee may choose to pay either

> (i) the Union's initiation fees and periodic dues or (ii) service fees which in the case of a regular service fee payer shall be equal to the Union's initiation fees and periodic dues, and in the case of an objecting service fee payer shall be the proportion of the initiation fees and dues corresponding to the portion of the Union's total expenditures that support representational activities.

Therefore, even if Farrell was a non-union member, he would not be subject to termination under this provision so long as one of the above requirements was satisfied. Plaintiffs' do not indicate which condition was satisfied, but presumably, Farrell did comply with one of these requirements because he received continued employment, health benefits, and credit for pension benefits. (See Fernandez Aff. ¶ 6.) Defendant was nonetheless obligated to make contributions to the Funds on behalf of Farrell because he was a covered employee under the terms and conditions of the Agreement. The Union's failure to timely notify defendant of Farrell's refusal to join the Union, or otherwise pay the required fees, does not affect defendant's obligation to remit payments to the Funds for the period that Farrell was employed.

Mauro's Plumbing, 84 F. Supp. 2d at 354.

Whether there is any ambiguity in the contract language is a question of law. See, e.g., Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir. 1998). "If the contract language is clear, summary judgment is appropriate." Mauro's Plumbing, 84 F. Supp. 2d at 352 (citations omitted). Additionally,

> in determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning, giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish. There may not be any genuine issue regarding the inferences to be drawn from the language. The inferences may not be reasonably susceptible to having more than one meaning ascribed to them.

Healy v. Rich Prod. Corp., 981 F.2d 68, 72 (2d Cir. 1992) (quotations and citations omitted).

Having examined the Agreement and documentation submitted by both parties, I conclude that plaintiffs have produced sufficient evidence to establish that, as a matter of law, Farrell was a covered employee and that there is no genuine issue of material fact as to whether defendant was obligated to make contributions to the Funds on his behalf. The Agreement unambiguously required defendant to make contributions on behalf of office employees and no distinction was made between union and non-union employees. Accordingly, plaintiff's motion for summary judgment as to defendant's liability for unpaid contributions on behalf of Farrell is granted.

### 2. Julio Cali and Henry Womack

Defendant argues that at various times during the period January 1, 2000 through December 31, 2002 Cali and Womack were not employed by River Trucking and therefore, it was not required to make contributions to the Funds on their behalf. Defendant also states that during these periods of "lay-offs," it would "loan [Cali and Womack] money to carry them over"

and "these monies were paid back to the company at a later date." (Def.'s Opp'n at 2.) In support of its position, defendant produced affidavits from both Cali and Womack stating that defendant paid them "approximately one month's salary" as a loan that "was to be paid back at a later date." (Cali Aff.; Womack Aff.) Defendant contends that "[t]he affidavits of these two employees raise material issues of fact" that preclude granting plaintiffs' motion for summary judgment. (Def.'s Opp'n at 2.)

Under ERISA, "every employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due" 29 U.S.C. § 1059(a)(1). "Since the employer is in the best position to know the number of hours worked, courts have determined that the policies of ERISA are advanced by the imposition of a burden that reflects the employer's duties under ERISA." Local 282 Welfare Trust Fund v. A. Morrison Trucking, Inc., No. 92-CV-2076, 1993 WL 120081, at *1 (E.D.N.Y. March 30, 1993) (citing Combs v. King, 764 F.2d 818, 825 (11th Cir. 1985)); see also Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946).

Courts have utilized a burden shifting framework in cases where a benefit fund challenges the contributions owed by an employer. See Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692 (6th Cir. 1994); Brick Masons Pension Trust v. Indus. Fence & Supply, Inc., 839 F.2d 1333 (9th Cir. 1988); Combs v. King, 764 F.2d 818, 825 (11th Cir. 1985). First, the Funds must establish a prima facie case by demonstrating the inaccuracy of the employer's contributions. See Brick Masons, 839 F.2d at 1338; Combs, 764 F.2d at 825. Once the Funds produce this evidence, the burden then shifts to the employer to produce evidence of the precise amount of work performed, see Brick Masons, 839 F.2d at 1338; Combs,

764 F.2d at 825, or evidence that the assumptions underlying the audit are incorrect. See Painters Dist. Council No. 30 Pension Fund v. W & P Enterprises, Inc., No. 89-C-1866, 1991 WL 28232, at *3 (N.D. Ill. Feb. 27, 1991).

Although the Second Circuit has not yet decided the applicable standard in these cases, it has favorably discussed this burden shifting analysis. See New York State Teamsters Council Health and Hospital Fund v. Estate of DePerno, 18 F.3d 179, 183 (2d Cir.1994); Jaspan v. Glover Bottled Glass Corp., 80 F.3d 38, 41 n.3 (2d Cir. 1996) cert. denied, 519 U.S. 821 (1996). While lower courts have applied the burden shifting analysis at trial, see Grabois v. Action Acoustics, Inc., 94 Civ. 7386, 1995 WL 662127, at *2-3 (S.D.N.Y. Nov. 9, 1995); A. Morrison Trucking, Inc., 1993 WL 120081, at *1-2 (E.D.N.Y. Mar. 30, 1993), they have generally declined to do so at the summary judgment stage, stating that "the proper question in deciding the Fund's motion for summary judgment is whether defendant has submitted evidence that raises a factual dispute as to the amount of damages owing the Fund." Demolition Workers, 2000 WL 297244, at *7; see also Murphy's Tire, 1998 WL865594, at *8; Brown v. Dominic Prisco Transport, Inc., 95-CV-1121, 1997 WL 1093463, at *10 (E.D.N.Y. Aug. 16, 1997).

It is unnecessary to examine whether the burden shifting analysis is appropriate in this case because defendant has nonetheless failed to meet its burden on summary judgment. To rebut plaintiffs' assertion that defendant failed to remit all of the required contributions to the Funds on behalf of Cali and Womack, defendant offers two virtually identical affidavits from these employees stating, "[t]his letter is to verify that River Trucking & Rigging Inc. paid me approximately one month's salary as a loan due to the fact that there was no work available at that time. As agreed upon by River Trucking & Rigging Inc. this money was to be paid back at a

10

later date."[2] (Cali Aff.) These employee affidavits are insufficient to defeat plaintiffs' motion for summary judgment because, standing alone, they simply do not raise a genuine issue of material fact. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of a complaint or answer with conclusory allegations of an affidavit.").

Defendant has not submitted any additional documentation to support its assertion that the money received by Cali and Womack were in fact loans. Furthermore, the affidavits do not state whether these alleged loans were made during the period covered by the audit, nor do they state whether these loans were paid back, if ever. More importantly, however, the facts contained in the affidavits directly undermine the accuracy of defendant's payroll accounts, which was the principal means by which the auditors determined that a deficiency in contributions existed.[3] Based upon defendant's records, the auditor concluded that both Cali and Womack worked a specific number of hours for which no contributions were made. In its opposition to plaintiffs' motion for summary judgment, defendant does not offer any evidence of its payroll records to contradict these findings. Finally, even if the money received by Cali and

---

[2] Womack's Affidavit uses virtually the same quoted language. "This letter is to verify that River Trucking & Rigging Inc. paid me approximately one month's salary as a *temporary* loan due to the fact that there was no work available *for me* at that time. As agreed upon by River Trucking & Rigging Inc. *the* money was to be paid back at a later date." (emphasis added to denote the only differences between the two employee statements).

[3] According to the auditors,

> [t]he procedures employed for this payroll audit included: comparing gross wages reported in the payroll records with Form 941, WT4-B, NYS-4 and W-2 totals, comparing wage rates in employer's payroll records with hourly rates set forth in union wage schedules; comparing total payroll hours for all bargaining unit employees with total hours reported to the Funds; and examining cash disbursement journals.

(Kuzma Aff. ¶ 3.)

Womack were in fact loans, their affidavits state that the loans were the equivalent of "approximately one month's salary." The audit, however, revealed that there were several months during the three year audit period for which defendant failed to make contributions to the Funds on behalf of Cali and Womack.[4]

To defeat plaintiff's motion for summary judgment, defendant had to provide more than the conclusory allegations contained in the two employee affidavits. This evidence is, by itself, insufficient to raise a factual dispute as to the amount of damages owing the Funds. Accordingly, plaintiff's motion for summary judgment as to defendant's liability for unpaid contributions on behalf of Cali and Womack is granted.

**E. ERISA Relief**

ERISA allows employee benefit plan fiduciaries to bring civil actions to enforce the provisions of the plan and obtain equitable relief. 29 U.S.C. § 1132(a)(3)(B)(ii); see also id. § 1132(d)(1). Section 1145 makes clear that a plan member's contractual duty to make contributions to multiple employer plans "becomes a statutory requirement, and the duty may be enforced in accordance with § 1132(g)." Gilles v. Burton Cont. Co., 736 F.2d 1142, 1143 n. 2 (7th Cir. 1984).[5] With respect to actions by fiduciaries, ERISA also allows for the recoupment

---

[4] The audit revealed that defendant did not make payments to the Funds on behalf of Cali for May 2000, February 2001, March 2001, May 2001, October 2002, November 2002, and December 2002. The audit also revealed that defendant failed to make payments on behalf of Womack for December 2000 and January 2001.

[5] Section 1145 of ERISA requires

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. According to the Second Circuit, Congress adopted section 1145 so that plans could rely on their agreements and "'recover delinquent contributions efficaciously, and without regard to issues which might arise

of attorney's fees and costs stemming from delinquent contributions. Section 1132(g)(2) provides that in such actions the district court shall award the following:

>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

This action was brought on behalf of the employee benefit plans, therefore, section 1132(g)(2) controls.

Defendant failed to properly remit all of the required contributions to the Funds on behalf of employees Farrell, Cali, and Womack for the period January 1, 2000 through December 31, 2002 in the amount of $15,048.80. Plaintiffs are therefore entitled to $15,048.80 for unpaid contributions, plus any interest, liquidated damages, attorney's fees, and costs accrued during the pendency of this action.

### III. CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment is granted as to defendant's liability for unpaid contributions to the Funds in the amount of $15,048.80, plus interest, liquidated damages, attorney's fees, and costs. Plaintiffs shall submit updated documentation, including all relevant provisions of the collective bargaining agreement and any

---

under labor-management relations law . . . .'" Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990), cert. denied, 498 U.S. 982 (1990). "Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." Id.

trust agreements, to support its request for interest and liquidated damages, as well as an affidavit to support its request for attorney's fees and costs no later than 30 days from the date of this Order.

SO ORDERED.

Dated: Brooklyn, New York
September 20, 2005

___/s/_____
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE